[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by Dennis M. Kendall and Margaret A. Kendall from the assessment of damages in the amount of $2200 paid by the Town of Plymouth for the partial taking by eminent domain on April 10, 1990, of their property situated on the westerly side of Fountainhead Road, being a permanent easement and a temporary easement for the construction of a sanitary sewer line as follows:
The ten (10) foot permanent easement is shown on a map or plan entitled, "Sanitary Sewer Easement For Town of Plymouth Across Land of Dennis Margaret Kendall, 10 Fountainhead Road, Terryville, Conn., Scale 1 = 40', Sept. 22, 1989, Rev. Oct. 12, 1989, Robert C. Green, Old Waterbury Rd., Terryville, Conn. 06786," which said ten (10) foot easement is bounded and described as follows:
Commencing at a point 58+/- feet southerly of the northeasterly corner of Lot 67 Fountainhead Road, thence running 133+/- feet to a point 128+/- feet westerly of said northeasterly corner of said Lot 67; thence running easterly a distance of 23+/- feet along the northerly boundary line of said Lot 67; thence running 109+/- feet through said property to a point 48+/- feet from the said northeasterly corner of Lot 67; thence running southerly along the eastern boundary of said Lot 67 a distance of 10+/- feet to the point and place of beginning.
The ten (10) foot temporary easement for construction purposes is also shown on the above map or plan and adjoins the above permanent easement 109+/- feet on the north.
The subject property is located in the Terryville section of the Town of Plymouth, in the northwest corner of town, near the town lines of Thomaston and Harwinton. The zone is RA-2, single family residential. It is in a subdivision of similar homes known as "Plymouth Farms." The lot contains approximately 48,352 square feet, being about 1.1 acres in area. Its frontage is 150 feet. Average depth of the lot is 350 feet.
The subject dwelling is a wooden frame structure built in 1983 containing fire rooms and a two-car built-in garage. The lower level is CT Page 5093 unfinished. A two-car detached garage was added in 1988 south of the dwelling. The dwelling is 90 feet from the street line and its major portion is located in the northern half of the lot, its northwesterly corner being 29 feet from the northern boundary. The septic system is located in front of the house, the leaching pipes being 25, 37 and 49 feet away and parallel to it and extending northward to about 15 feet from the property line. Although the rear of the lot is flooded, the remainder of the land is well landscaped.
The ten-foot permanent sewer easement, quadrilateral in shape, starts from the road frontage alone the northeast corner of the subject site, bisecting the lot on a diagonal in a northwesterly direction. The easement is approximately 133 feet alone its southerly line nearest the house and as close as about 13 feet from it at one point. It is about 32 feet from the well in the rear of the house. This easement crosses the leaching pipes and field of the septic system, and contains about 100 square feet of area.
The ten-foot temporary easement was parallel to the permanent easement and adjacent to it on the north for a distance of about 109 feet. The total area of the temporary easement taken in these proceedings was about 1000 square feet. In the actual laying of the sewer line in the permanent easement, however, the ten-foot wide temporary easement was insufficient, and the contractor was compelled thereby to commit a technical trespass during construction. By the owners' measurement, this trespass extended as much as 26 feet beyond the limits of the easements.
The sewer line has been completely installed. The construction period extended over six-months from March 1990. After blasting by the contractor in the easement area, it was necessary for the plaintiffs to have their well inspected for possible damage at a cost of $150. This expense is conceded by the defendant. During construction two of the 4" leaching field pipes were broken and capped off. This created only a temporary problem with the septic system, since a sanitary sewer has now been installed. All utility lines are underground. The electrical power was disturbed five times during construction. Also, the plaintiffs' property was used for access to the easement in the rear of property adjoining on the north.
Necessary grading, and seeding have taken place. The front yard of the property has now been partially restored to its prior state. An 8-10" double maple tree, a 3-4" tree, a large mountain laurel bush, other flowering but bushes and shrubs were removed during construction from the permanent and temporary easement areas in the front yard without replacement, all to the loss in value and damage to the plaintiffs' property.
The subject property was purchased by the plaintiffs on June 2, 1987, for $129,900. Subsequent thereto, they added a detached two-car garage, 24 feet by 24 feet in size, with a fully finished loft area and water and electrical facilities.
The highest and best use of the subject property is for its continued CT Page 5094 use as a single-family residence. The general subject area displays above average price of home ownership.
The appraisers for the plaintiffs and the defendant utilized the sales comparison or market approach in their estimates. Each appraiser, however, found different comparable sales in his analysis. The plaintiffs' appraiser estimated the value of the subject property before the taking at $154,000. Its value after the taking be calculated to be $150,164, thereby finding the damages due to the taking to be $3836.
In correlating these damages, he broke them down into four parts: The value of the permanent easement he found to be $1.40 per square foot for a total of $1526. No value was assigned to the temporary easement, notwithstanding the effect upon the property and its value during the spring and summer months of its utilization. Instead, the plaintiffs' appraiser allowed a rental factor of $232 per month for five months, or a total of $1160. Another element of damage he utilized was that he called "quasi severance" or "privacy factor," the loss of trees and shrubs. This he calculated to be $1000. The final element of damage was the cost of checking the well for possible blasting damage. This amount of $150 has been conceded by the defendant.
The defendant's appraiser estimated the fair market value of the plaintiffs' property before the taking to be $155,000. Finding its value after the taking to be $153,000, he calculated the damages from the permanent taking at $2000. In addition, he estimated the damages from the temporary easement at $200. This total in damages, or $2200 by his calculation, was paid to the plaintiffs at the time of the taking.
It is the charge of this court to make an independent determination of value and fair compensation for the property taken in the light of all circumstances, the evidence, the opinions of the expert witnesses, his knowledge of the elements that establish value, and a viewing of the premises. Minicucci v. Commissioner of Transportation, 211 Conn. 383, 388
(1989). In performance of this duty, I find that the before taking value of the subject property was $155,000, and that the after taking value is $150,250. Damages, therefore, are assessed at $750.
Judgment may enter for the plaintiffs in the amount of $4750, less $2200 already paid, or an excess of $2550, with interest on such excess from the date of taking to the date of payment, together with costs, and a reasonable appraisal fee of $800.
WILLIAM C. BIELUCH, State Trial Referee